## ERNEST TYERS *v.* MEDI COMA ET AL.
### (13818)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued December 8, 1989—decision released February 20, 1990

*Jeffrey D. Ginzberg,* for the appellant (plaintiff).

*Donald W. McGill,* with whom, on the brief, was *Rene G. Martineau,* for the appellees (defendants).

COVELLO, J. This is an appeal from a judgment of the trial court, *Hon. James T. Healey,* state trial referee, refusing to set aside an allegedly fraudulent transfer of real property. The dispositive issues are:

(1) whether the trial court failed to consider one of the two alternative tests required to establish a fraudulent conveyance; and (2) whether the trial court's factual determinations are supported by the evidence. We find no error.

The trial court found the following: On July 31, 1984, the Travelers Insurance Company paid the defendant Arzije Coma $115,000 in satisfaction of a workers' compensation claim. This sum represented compensation for a permanent injury to Mrs. Coma's right arm. Mrs. Coma thereafter deposited the entire amount of the compensation settlement into a passbook money market bank account that she owned jointly with her husband, the named defendant Medi Coma. Each defendant could withdraw the entire sum of money at any time.

Thereafter, Mr. Coma requested permission from Mrs. Coma to borrow funds from the settlement proceeds for his own business purposes. Mrs. Coma consented to the withdrawals, but only upon the express condition that all funds withdrawn be repaid. Mr. Coma agreed. Mrs. Coma never withdrew any of the funds herself, but consented to the withdrawals made by Mr. Coma.

On November 22, 1985, Mr. Coma purchased a restaurant business from the plaintiff. Mr. Coma gave the plaintiff an unsecured $50,000 promissory note as part of the purchase price. Both defendants intended the restaurant to be a gift for their twenty-one year old son. For a variety of reasons the business was not profitable.

On November 1, 1987, Mr. Coma defaulted on the payment of the promissory note held by the plaintiff. On April 24, 1988, he closed the doors of the restaurant. By that date, the contents of the joint money mar-

ket bank account had been exhausted. Mrs. Coma thereupon demanded immediate repayment of all sums that Mr. Coma owed her.

On May 25, 1988, Mr. Coma executed a quitclaim deed transferring to Mrs. Coma his one-half interest in the marital premises, located in Wolcott. The stated consideration on the deed was $75,000. At the time of the conveyance, the fair market value of the property was approximately $250,000, and it was subject to mortgages approximating $150,000. Mr. Coma had no other assets at that time.

On June 20, 1988, nearly one month after the conveyance, the plaintiff began a collection action seeking the balance due on the note. Incident thereto, the plaintiff sought, by way of prejudgment remedy, to attach Mr. Coma's interest in the marital premises. On January 23, 1989, the plaintiff, having discovered the earlier conveyance, commenced a second action, this time against both defendants, seeking to set aside the transfer as a fraudulent conveyance. The two actions were thereafter consolidated for trial.

On June 26, 1989, the trial court rendered judgment in the collection action in favor of the plaintiff, against Mr. Coma, in the amount of $45,695.70 together with interest of $7824.21. In the fraudulent conveyance action, however, the trial court rendered judgment in favor of the defendants. The plaintiff appealed from the judgment in the fraudulent conveyance action to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

On appeal, the plaintiff raises three claims of error: (1) the trial court erred in considering only one of the two alternative tests for establishing a fraudulent transfer; (2) the trial court erred by concluding that there was good consideration for the transfer of the property from Mr. Coma to Mrs. Coma; (3) the trial court

erred in failing to conclude that Mrs. Coma made an inter vivos gift to Mr. Coma of the compensation settlement proceeds, rather than a loan.

The party seeking to set aside a conveyance as fraudulent[1] bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Bizzoco* v. *Chinitz,* 193 Conn. 304, 312, 476 A.2d 572 (1984); *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983). The party seeking to set aside the conveyance need not satisfy both alternatives. *Bizzoco* v. *Chinitz,* supra.

The plaintiff argues that the trial court failed to apply the second test, i.e., that Mr. Coma made the conveyance with a fraudulent intent in which Mrs. Coma participated. We do not agree.

Whether the conveyance in question was fraudulent is purely a question of fact. *Zapolsky* v. *Sacks,* supra. Fraudulent intent must be proved, if at all, by " ' "clear, precise and unequivocal evidence." ' [*Alaimo* v. *Royer,* 188 Conn. 36, 39, 448 A.2d 207 (1982)]." *J. Frederick Scholes Agency* v. *Mitchell,* 191 Conn. 353, 358, 464 A.2d 795 (1983). This standard of proof applies to intra-familial conveyances. Where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). As the factfinder, the trial court

---

[1] General Statutes § 52-552 provides that "[a]ll fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

was entitled to accept the testimony of Mr. Coma that he did not intend to deprive the plaintiff of the money owed him when he transferred the real estate to Mrs. Coma. See *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). The trial court was entitled, similarly, to accept the testimony of both defendants that a loan agreement existed between them that obligated Mr. Coma to repay the entire $115,000 amount owed to his wife. The trial court was further entitled to accept the testimony of both defendants that the transfer of Mr. Coma's equity in the marital premises was in partial satisfaction of his obligation to his wife. "Since the trier of fact is the ultimate judge of the credibility of witnesses, we may not pass upon [their credibility]. *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975)." *State* v. *DeForge,* 194 Conn. 392, 398, 480 A.2d 547 (1984). We conclude that the trial court properly considered the applicable law, and that the plaintiff simply failed to meet his burden of proof, in the eyes of the trial court, as to the elements necessary to set aside the conveyance as fraudulent.

The plaintiff next argues that the trial court erred when it found that consideration existed to support the subsequent transfer of the marital premises. As the party attempting to prove the lack of consideration, the plaintiff bore the burden of proof. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 342, 150 A.2d 597 (1959); see also *Iseli Co.* v. *Connecticut Light & Power Co.,* 211 Conn. 133, 142, 558 A.2d 966 (1989).

The trial court found that the conveyance of Mr. Coma's equity in the marital premises to Mrs. Coma was part of the contract between them to repay the $115,000 that he had borrowed from her compensation settlement, and was in fact a partial repayment of Mr. Coma's original obligation. This contention, as claimed by both Mr. and Mrs. Coma in their testimony, pre-

sented a factual issue that was within the sole province of the trial court to decide. See, e.g., *Zapolsky* v. *Sacks,* supra, 201. We conclude that the trial court did not clearly err[2] in making that finding.

The plaintiff's final contention is that the trial court erred in not concluding that Mrs. Coma made an inter vivos gift of her $115,000 compensation settlement when she placed that amount in the money market bank account jointly owned with Mr. Coma. This, again, is a factual matter to be determined by the trial court. In this instance, the trial court chose to accept the testimony of both defendants that the agreement between them was a loan, and that Mrs. Coma expected Mr. Coma to repay all funds borrowed from the account. We find that the conclusion implicitly drawn by the trial court, i.e., that Mrs. Coma did not make an inter vivos gift, is supported by the testimony of the parties. See *Bergen* v. *Bergen,* 177 Conn. 53, 56–57, 411 A.2d 22 (1979); *Clayman* v. *Prochaska,* 2 Conn. App. 430, 435, 479 A.2d 1214 (1984).

Factual findings may not be rejected on appeal because the reviewing judges personally disagree with the conclusion of the trial court or would have found differently had they been sitting as factfinders. *Kaplan* v. *Kaplan,* supra, 391. This court may reject factual findings only if they are "clearly erroneous" in view

[2] "[Practice Book] Sec. 4061. (Formerly Sec. 3060D). REVIEW BY THE SUPREME COURT

"The supreme court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"If the supreme court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"It is the reponsibility of the appellant to provide an adequate record for review."

of the entire record. Practice Book § 4061; *Kaplan* v. *Kaplan,* supra, 392. This is not the case here.

There is no error.

In this opinion the other justices concurred.