[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS FOR DISQUALIFICATION OF COUNSEL
The plaintiff is a professional corporation engaged in the practice of law. It has brought this action against the defendant for payment of fees allegedly owing and unpaid. The defendant has denied that the sums are due and has filed a counterclaim, currently in its sixth revision, alleging unjust enrichment, defamation, breach of fiduciary duty and a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiff law firm, of which Attorneys Bradley Cooney and Todd Bainer are the sole members, is representing itself in this matter. The defendant has retained Attorney Charlotte Croman to represent him.
Whatever may be the merits of the parties' respective claims against each other, the history of this case has been dominated by the all too apparent personally antagonistic feelings of the attorneys toward each other. Of the more than 80 numbered pleadings in this case to date, there have been no less than six motions for sanctions, two motions for protective orders, one motion for a restraining order and one motion for contempt, all directed at the conduct of the attorneys rather than the parties. The animosity has been apparent in pretrial conferences as well. Most recently, the plaintiff has filed a motion to cite in the defendant's attorney as a party defendant so that it can make a claim of vexatious litigation against her.[1] This tide of vitriol has shown no sign of ebbing.
Each party has filed a motion to disqualify the other's CT Page 6134 counsel. For reasons unrelated to the merits of the two motions, there is no question in the court's mind that the prospects for a fair and equitable resolution of this case would be substantially enhanced by granting one or both motions. Alas, the parties have given the court no legal basis upon which to grant either.
"The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys." Bergeron v. Mackler, 225 Conn. 391, 397,623 A.2d 489 (1993). "Since October, 1986, the conduct of attorneys has been regulated also by the Rules of Professional Conduct, which were approved by the judges of the Superior Court and which superseded the Code of Professional Responsibility." Id.
Rule 3.7 of the Rules of Professional Conduct provides:
 (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) The testimony relates to an uncontested issue;
 (2) The testimony relates to the nature and value of legal services rendered in the case; or
 (3) Disqualification of the lawyer would work substantial hardship on the client.
 (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.
A. Disqualification of Plaintiff's Counsel
It is agreed by all parties that Cooney is a necessary witness and that he will not act as counsel during the course of the trial. Pursuant to Rule 3.7(b), however, the plaintiff seeks to have Bainer act as its advocate. At issue in this case, therefore, is whether Bainer himself is likely to be a necessary witness and, if so, whether he falls within any of the exceptions to the Rule. There has been no claim that any of the provisions of Rules 1.7 or 1.9 would preclude this.[2] Rather, the defendant claims that Bainer's testimony is necessary in its own CT Page 6135 right, and that it goes beyond issues relating to "the nature and value of legal services rendered in the case". He further claims that the entire law firm is disqualified from representing itself because it is a corporation.
In his memorandum of law in support of his motion to disqualify and in oral argument, the defendant states that he intends to call both Bainer and Cooney to testify as to their long-time representation of the defendant, billable hours and fees charged, and the manner in which those fees which have in fact paid were allocated to the various files on which the plaintiff law firm represented him.
The defendant agrees that most if not all of the legal work which is the subject of the litigation was performed by Cooney and appears to acknowledge that as to the issue of services rendered and fees charged, it is only Cooney's testimony that is actually necessary. The defendant believes, however, that he has the right to call Bainer on the issue of the law firm's allocation of payments received to specific files or accounts, which, he claims, is qualitatively different from testimony which Cooney is able to give.
At oral argument, much of the discussion focussed on whether Bainer's proposed testimony was anything other than an extension of testimony regarding the "nature and value of the legal services rendered" by the law firm. If that were indeed the issue, the court would be inclined to conclude that the billing and bookkeeping related decisions about which the defendant proposed to inquire are sufficiently related to the nature and value of the legal services rendered as to be included within that concept for purposes of the rule.
But the rule appears to be more specific, referring to testimony about the "nature and value of legal services renderedin the case". (Emphasis added). It is thus not at all clear that the rule refers to legal services rendered and fees charged in a prior proceeding, even if that prior proceeding forms the basis of the claims raised in the present action. If that were the intention, the rule could easily have been made to say so explicitly. Indeed, and to the contrary, the commentary to the rule states: "Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered,
permitting the lawyers to testify avoids the need for a second CT Page 6136 trial with new counsel to resolve that issue." (Emphasis added). Thus, the phrase "in the case" refers to the case then being prosecuted and thus applies, for example, to a lawyer's testimony regarding his or her services and fees in connection with a claim for attorneys fees as a part of the prayer for relief in that case.
In short, the exception for testimony relating to "the nature and value of legal services performed `in the case'" is inapplicable to the testimony that either Cooney or Bainer would offer in this case, which is not the case in which those legal services was rendered.[3] Cooney, however, may nonetheless testify, and Bainer may act as the plaintiff's advocate as he does so, based on the exception provided by Rule 3.7(b).
The real issue is whether Bainer's testimony is "necessary". As to issues regarding the plaintiff's allocation of fees received to different files or accounts, the defendant claims that only Bainer can answer such questions, but he has not offered credible evidence to support his contention. Although both Cooney and Bainer were present in court on the day the motions for disqualification were argued, defendant did not call them as witnesses to support his position that, even if testimony on this issue is found to be relevant, only Bainer, as opposed to Cooney, could give it. The defendant himself testified but shed no light on this issue.
"[W]henever counsel for a client reasonably foresees that he will be called as a witness to testify on a material matter, the proper action is for that attorney to withdraw from the case."Enquire Printing Publishing Co. v. O'Reilly, 193 Conn. 370,376, 477 A.2d 648 (1984). "Where, however, an attorney does not withdraw, a court exercising its supervisory power can enforce the mandate of [Rule 3.7] and disqualify the attorney." Id. See also, Fredericks v. Fortin, 13 Conn. L. Rptr. 234 (December 30, 1994) (Hadden, J.); Mascia v. Faulkner, 12 Conn. L. Rptr. 122
(July 5, 1994) (Fracasse, J.); Davis v. Pearson,4 Conn. L. Rptr. 407 (August 7, 1991) (Dorsey, J.); Tagliaferi v. Barry,2 Conn. L. Rptr. 634 (October 22, 1990) (Jones, J.); Gang v. Brufsky,2 CSCR 815 (July 20, 1987) (Harrigan, J.).
"A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony and availability of other evidence." Tropical Suntan Centers, Inc. v.Salvati, 1 Conn. L. Rptr. 497, 498 (April 12, 1990) (Meadow, J.). CT Page 6137 "There is a dual test for `necessity.' First the proposed testimony must be relevant and material. Second, it must be unobtainable elsewhere." (Citations omitted.) Id.
 Whether a witness `ought' to testify is not alone determined by the fact that he has relevant knowledge or was involved in the transaction at issue. Disqualification may be required only when it is likely that the testimony to be given by the witness is necessary. Testimony may be relevant and even highly useful but still not strictly necessary. A finding or necessity takes into account such factors as the significance of the matters, weight of the testimony and availability of other evidence.
S S Hotel Ventures Limited Partnership v. 777 S.H. Corp.,69 N.Y.2d 437, 445-46 (1987); see also Keoseian v. Von Kaulbach,707 F. Sup. 50, 154 (S.D.N.Y. 1989).
"The party moving to disqualify opposing counsel bears the burden of proof." Munk v. Goldome National Corp., 697 F. Sup. 784,787 (S.D.N.Y., 1988). In Tropical Suntan Centers, supra, the Superior Court held that the defendant had failed to satisfy his burden of proof upon his motion to disqualify opposing counsel. Similarly, in the later Superior Court case of DeMarco v. FireCommand, Inc., 2 CTLR 101 (July 27, 1990) (Downey, J.), the court also addressed the issue of whether a party attorney could testify as a witness. The court in DeMarco denied the plaintiff's motion to disqualify opposing counsel on the ground that the plaintiff failed to show that opposing counsel's testimony would be "genuinely needed." DeMarco, 2 CTLR at 102, citing AtlanticRichfield Co. v. Canaan Oil Co., 202 Conn. 234, 248-49. The court stated that the mere statement that the attorney "will be a necessary party witness" was not sufficient to meet his burden of proof. Id.
The Rules of Professional Conduct, to the extent that they might be relevant to the defendant's motion, are designed to guard against conflicts of interest. To be sure, the interests of the plaintiff, who once represented the defendant, are antagonistic to those of the defendant in this case, but that is not the same thing as a conflict of interest. The defendant is plainly seeking to use the Rules as a sword, rather than a shield, in order to up the economic ante for the plaintiff. This purpose is not consistent with the purpose of the Rules. The defendant has not established that Bainer is a necessary witness CT Page 6138 within the meaning of Rule 3.7. The motion to disqualify him is therefore without merit.
The defendant has also not offered any evidence as to why the entire firm should be disqualified under Rules 1.7 or 1.9. Rule 1.7 applies to situations where representation of one client will be "directly adverse" or "materially limited" by the attorney's "responsibilities to another [existing] client or to a third person or by the lawyer's own interests." Rule 1.9(a) prohibits representation if the interests of a current client are materially adverse to the interests of the former client and the two matters of client representation are "the same" or "substantially related." This case presents none of these scenarios. The only connection between this case and the plaintiff's prior representation of the defendant is the matter of the allegedly unpaid fees, and this is not the kind of substantial relationship contemplated by the Rule.
The defendant did make an alternative argument, however, that because a corporation may not file a pro se appearance, the plaintiff firm, which is a professional corporation, should be disqualified. "The authorization to appear pro se is limited to representing one's own cause, and does not permit individuals to appear pro se in a representative capacity." ExpresswayAssociates II v. Friendly Ice Cream Corp. of Connecticut,34 Conn. App. 543, 546, 642 A.2d 62 (1994).
In State Bar Association v. Connecticut Bank Trust Co.,145 Conn. 222, 234-35, 140 A.2d 863 (1958), our Supreme Court stated:
 The practice of law is open only to individuals proved to the satisfaction of the court to possess sufficient general knowledge and adequate special qualifications as to learning in the law and to be of good moral character . . . The practice of law is not a lawful business except for members of the bar who have complied with all the conditions required by the rules. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a business in which a corporation may legally engage. As it cannot practice law directly, it cannot do so indirectly by employing competent lawyers to practice for it, since that would be an evasion which the law will not tolerate.
However, as noted in King v. Guiliani, 9 Conn. L. Rptr. 527, CT Page 6139 534 (September 13, 1993, Spear, J.):
 Since Bar Assn., supra, the Connecticut legal landscape has changed. Attorneys may now form professional corporations to practice law. Connecticut General Statutes § 33-182a through 33-182l. Legal services to the poor are delivered through legal service corporations authorized by federal legislation. 42 U.S.C. § 299b. . . . Professional corporations and legal services corporations are artificial creatures of statute and, as such, just as lacking in the human attributes required of attorneys as any other corporation. The policy reasons for allowing attorneys to practice within such entities appears to be that the interests of the courts as well as the public are protected by the structure of those corporations. It is axiomatic that a corporation can act only through its agents, servants and employees. All practitioners employed by a professional corporation or a legal services corporation must be admitted to practice and they are, therefore, bound by the rules of professional conduct and subject to the same control by the courts as all other attorneys.
The concerns expressed by the court in State Bar Assn. are not present where the corporation was formed for the specific purpose of providing legal services, and where the members are licensed attorneys bound by the Rules of Professional Conduct. The defendant's effort to have the plaintiff firm disqualified because it is a corporation is without merit.
B. Disqualification of Defendant's Counsel
The pleadings in this case suggest that Croman, the defendant's present counsel, is the lawyer who concluded the work on the files that are the subject of the defendant's counterclaim. The plaintiff had indicated many issues on which it intended to have Croman testify, including facts about the successful conclusions to cases allegedly ruined or not filed by the plaintiff, questions about the timing of subsequent claims, when the defendant asked which attorneys to represent him in these matters, whether the defendant suffered harm in light of the successful resolution of the claims by the defendant's present counsel, and possible mitigation of damages questions based on his fee arrangements with Croman.
The defendant's most recent revision of his counterclaim, CT Page 6140 however, in an apparent effort to avoid his counsel's disqualification, eliminates all such claims in which Croman's testimony could be reasonably construed as necessary. The current counterclaim alleges only unjust enrichment (five counts), defamation, breach of fiduciary duty and a CUTPA violation. The plaintiff has not shown that Croman's testimony would be necessary on any of the issues raised in these counts, as currently pleaded.
The plaintiff also claims that Croman's testimony would be necessary in connection with its proposed complaint against both her and the defendant based on vexatious litigation. Until and unless the citing in of Croman is approved and an amended complaint permitted by the court, however, any such consideration is premature. To be sure, a threatened claim of vexatious litigation and consequent disqualification of counsel would have a chilling effect on an attorney's zealous representation of his or her client and should not, in and of itself, be the basis for disqualification.
The plaintiff also seeks to have Croman disqualified because of what it perceives to be her unprofessional conduct throughout the course of his litigation. Whether or not the plaintiff's perceptions have merit, the plaintiff has not directed the court to any rule that would mandate the drastic remedy of disqualification.
At bottom, both motions for disqualification appear to be grounded in the opposing attorneys' dislike and lack of respect for each other. Neither motion for disqualification has legal merit, however, and both are therefore denied.
Jonathan E. Silbert, Judge